**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAMALA ODOM,**

                                        **Plaintiff,**

        **v.**                                                        **5:19-CV-835**
                                                                      **(TJM/ATB)**

**SYRACUSE CITY SCHOOL DISTRICT,**
**SYRACUSE CITY SCHOOL DISTRICT BOARD**
**OF EDUCATION, and JEFFREY BELLAMY,**
**Individually and in his capacity as the Dean**
**of Students at Henninger High School,**

                                        **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


                        **DECISION & ORDER**

        Defendants have filed a motion to dismiss this action.  See dkt. # 10.  In the

alternative, they seek summary judgment.  They argue that the action is barred by the

doctrines of _res judicata_ and collateral estoppel, and that Plaintiff has in any case failed to

state a claim upon which relief could be granted.  The Plaintiff has responded and the

Court has determined to decide the matter without oral argument.  Defendants have also

moved for sanctions.  See dkt. # 28.  The parties have briefed that issue as well.

**I.      BACKGROUND**

        This case concerns Plaintiff Kamala Odom's employment with Defendant

Syracuse City School District and her encounters with Defendant Jeffrey Bellamy as a part

of that employment.  Plaintiff began working as a Job Coach/Teaching Assistant at

Henninger High School in the Syracuse City School District in the 2016-17 school year.

Complaint ("Complt."), dkt. # 1, at ¶ 20.  She had spent the previous year as a long-term

substitute, teaching at "Dr. King."[1]  Id.  Plaintiff alleges that she felt like a "loaner [sic]"

while working at Henninger.  Id.  Her assignments changed constantly and the school

provided her with very little support.  Id.  at ¶ 21.  At first, Bellamy helped Plaintiff with

these issues, since he "was familiar with the staff and students" at Henninger.  Id. at ¶ 22.

Until he started to "[cross] professional boundaries," Bellamy was a "great source of

support for Plaintiff[.]"  Id.

Plaintiff contends that Bellamy sexually harassed and bullied her while she worked

for the Defendant School District, that she complained about that harassment, and that the

School District fired her rather than address Bellamy's conduct.  Plaintiff alleges that the

District fired her on June 2, 2017. Id. at ¶ 14.  Before that firing, she "complained to several

co-workers about" Bellamy "making sexual advances towards her."  Id.  "[I]t became

escalated."  Id.  Bellamy allegedly "escalated" his "inappropriate behavior" on May 25, 26,

and 30, 2017.  Such "inappropriate and illegal sexual advances had been going on since

April 2017 and May 2017."  Id.

Plaintiff alleges that on May 25, 2017, she "was walking down the hall at Henninger

High School towards the ISS Room."[2]  Id. at 15.  "Defendant Bellamy call[ed] me from

---

[1]Plaintiff does not explain where "Dr. King" is, though other documents seem to
indicate that Dr. King is an elementary school in the Syracuse City School District.

[2]Plaintiff does not explain what the "ISS Room" is.

behind telling her he needed to see her in his office."[3] Id. Plaintiff stopped, and Bellamy approached her and told her he needed to see her in his office. Id. Plaintiff refused, and "Bellamy grabbed [her] by her ar[m]," pulling her. Id. He told her "not to make a scene." Id. Plaintiff relented and went with Bellamy to his office. Id. He "shut the door and started hugging the Plaintiff until someone knocked at his door." Id. Plaintiff demanded that Bellamy stop, "trying not to scream in the small area" where they were. Id. She told him "once again that she was married" and that she did not want Bellamy to touch her. Id.

A similar event occurred the next day. Id. at ¶ 16. Bellamy again told Plaintiff that she needed to come to his office. Id. He grabbed her arm and insisted that she come to the office. Id. When she refused, he again asked her if she intended "to make a scene in front of the students." Id. The two then walked down a long hallway. Id. Bellamy went first, and Plaintiff tried to avoid him by going in the opposite direction from Bellamy when they reached the end of the hallway. Id. Bellamy noticed, followed Plaintiff, grabbed her, and told her to follow him to his office. Id. Plaintiff was "stunned" and "speechless" about this conduct. Id. Once the two arrived at the office, Bellamy shut the door and "started smelling and kissing [Plaintiff's] hand." Id. Plaintiff resisted, telling Bellamy that she was married and that he could not engage in that conduct. Id. Bellamy had locked the door, and he stood in front of that door until someone knocked. Id.

On May 30, 2017, Bellamy entered the teacher's lounge while Plaintiff and a teacher were having a conversation. Id. at ¶ 17. Bellamy looked over at Plaintiff and gave her "a head nod." Id. The interaction left Plaintiff "uncomfortable." Id. That afternoon,

---

[3]The Complaint switches frequently between first- and third-person narration, and also employs inconsistent verb tenses.

Bellamy came into the lunchroom while Plaintiff was working with students and asked her why she had not come to his office. Id. at ¶ 18. Plaintiff explained that she did not have to come to his office. Id. Whenever she did, Plaintiff pointed out, Bellamy "could not keep his hands to himself." Id. Bellamy responded "well . . . you shouldn't look so good." Id. In the two weeks before May 26, 2017, Plaintiff alleges, she told co-workers that "she could not understand why she could not have a simple respected professional relationship with Defendant Bellamy without him making gestures and comments about him and her being together in a sexual way." Id. at ¶ 19. Bellamy "would kiss Plaintiff's hands and rub her shoulders" inappropriately, and in a way that made her "uncomfortable." Id. Plaintiff claims that Bellamy's requests to come to his office were not "professional, . . . but sexual in nature." Id. Bellamy closed the door when he had Plaintiff in his office. Id. Plaintiff alleges that she complained to her co-workers that Bellamy's attempt to have an affair with her was "relentless[.]" Id. at ¶ 23. Plaintiff "felt like he was trying to force her into an affair[.]" Id. Simply coming to work and being in the same building with Bellamy made Plaintiff uncomfortable: "she just did not know when he was going to show up wherever she was and start asking her questions of her whereabouts and about coming to his office[.]" Id.

Plaintiff has a bachelor's degree in social work and was overqualified for her position as Job Coach/Teaching Assistant. Id. at ¶ 24. She told Bellamy that she planned to apply for a Social Work Assistant position that had been advertised by the School District. Id. Bellamy told Plaintiff that she would be "great" at the job and promised to talk to the principal at Henninger about a job Bellamy claimed would be an opening at that school. Id. at ¶ 25. Bellamy claimed that the principal "listen[ed] to him about hiring and

4

firing individuals at Henninger." Id.  Plaintiff alleges that Bellamy conditioned such

assistance on Plaintiff providing him "sexual favors[.]" Id. at ¶ 26.

Plaintiff claims that Bellamy had "hounded" her since April 2017 without stop.  Id.

The month of May became the "most uncomfortable" part of her experience.  Id.  Bellamy

became more assertive, putting his hands on Plaintiff.  Id. at ¶ 27.  Plaintiff got "knots in

her stomach" when she came into the Henninger building.  Id.  She asked Bellamy to quit

making advances towards her "on a number of occasions."  Id.  Bellamy refused to

"respect" Plaintiff's marriage.  Id. at ¶ 28.  Bellamy acted inappropriately with other women

on staff, Plaintiff alleges.  Id.  Bellamy's behavior stopped only after Plaintiff's husband

came to the school on May 20, 2017 and told Bellamy that his "remarks and sexual

advances" made Plaintiff "uncomfortable."  Id.  "Two days later," Plaintiff alleges, she

received a letter directing her to attend "a meeting of dismissal."  Id.

Joshua Beardall, Ed.D, Director of Staff Relations, provided Plaintiff that letter.  Id.

at ¶30.  Before the meeting about her dismissal on June 2, 2017, Plaintiff reported a

complaint of sexual harassment to the Henninger principal and union representatives.  Id.

at ¶ 31.  Despite this complaint, the meeting ended by the Defendant district asking

Plaintiff whether she wanted to resign or be fired.  Id. at ¶ 32.  The District terminated

Plaintiff's employment as of June 30, 2017.  Id. at ¶ 33.

Plaintiff alleges that on June 5, 2017 she "officially wrote out a report and . . . filed

[a] sexual harassment complaint with" School District officials.  Id. at ¶ 35.  Patti Clark, the

Defendant District's Compliance Coordinator, came to Henninger within two weeks of that

date to meet with Plaintiff.  Id.  Patti Clark, Plaintiff claims, had viewed a video of Bellamy

putting his hands on Plaintiff.  Id.  Plaintiff claims that Patti Clark "stated" that "she believed

that Defendant Bailey abused his authority in the way he treated Plaintiff." Id.  Plaintiff

alleges that Clark told her that no one had informed Clark that Plaintiff would not be

returning to the District for the next school year.  Id.  Plaintiff told Clark that she had been

forced to resign at the meeting on June 2, 2017.  Id. at ¶ 36.

Plaintiff's Complaint contains five counts.  Count One, brought pursuant to 42

U.S.C. § 1983, alleges that Defendants violated Plaintiff's First and Fourteenth

Amendment rights under the United States Constitution.  She contends that Defendants

met her claims of sexual harassment by Bellamy with retaliation.  Id. at ¶ 48.  Count Two

alleges negligence and gross negligence.  Plaintiff contends that "Defendants, jointly and

severally, negligently and gross [sic] negligently caused injuries, emotional distress[,] and

damaged Plaintiff."  Id. at ¶ 56.  Count Three raises a false imprisonment claim against

Defendant Bellamy for his conduct in confining Plaintiff in his office without her consent.

Count Four contends that Bellamy engaged in sexual harassment by creating a hostile

work environment in which Plaintiff had to operate.  Count Five alleges retaliation because

Plaintiff engaged in "whistleblower" activities in reporting Bellamy's harassment.

Defendants responded to Plaintiff's Complaint with a motion to dismiss and for

summary judgment.  The parties have briefed the issues, bringing the case to its present

posture.

## II.  LEGAL STANDARD

For reasons that will become apparent, the Court will address only the standard for

a motion to dismiss.  The Defendants have filed a motion to dismiss Plaintiff's claims

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiff has

not stated a claim upon which relief could be granted, even if all factual allegations in the

complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  As a general matter, the court examines "the facts as asserted in the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  McCarthy v. Dun & Bradstreet Corp., 582 F.3d 184, 191 (2d Cir. 2007).  The Court "may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."  Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## III.    DISCUSSION

Defendants move on several grounds, which the Court shall address as appropriate.

### A.    Res Judicata

Defendants first argue that Plaintiff's claims are barred by the doctrine of *res judicata*.  They point out that Plaintiff has already sued the same Defendants in state court, asserting claims arising from the same set of facts.  Plaintiff asserted many of the same claims in her state case as in this action, including negligence, false imprisonment, sexual harassment, and retaliation.  While Plaintiff has added Section 1983 and (perhaps) Title VII

claims in this case, she could have raised those claims in her original cause of action, since they arise from the same set of facts. That matter resolved in the Defendants' favor and Plaintiff did not appeal dismissal of her action in New York court; she instead filed this case.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Education, 465 F.2d 79, 81 (2d Cir. 1984). "[U]nder the New York concept of *res judicata* a prior judgment is conclusive upon the parties in any subsequent action involving the same cause of action not only as to those issues which were actually litigated but also as to any issues which might have been, but were not, litigated in the earlier action." Winters v. Lavine, 574 F.2d 46, 56 (2d Cir. 1978). The doctrine provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (internal quotations omitted)). Thus, "'a prior decision dismissed on the merits is binding in all subsequent litigation between the same parties on claims arising out of the same facts, even if based upon different legal theories or seeking different relief on issues which were or might have been litigated in the prior action but were not.'" Northern Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 87 (2d Cir. 2000) (quoting EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394, 397 (2d Cir. 1997)). "Res judicata bars re-litigation if '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been,

8

raised in the prior action.'" Soules v. Connecticut, 882 F.3d 52, 55 (2d Cir. 2018) (quoting

Monahan v. N.Y.C. Dept. of Corr., 214 F.3d 275, 285 (2d Cir. 2000)). Thus, *res judicata*

"operates in two ways: (1) it bars claims that were brought and decided in a prior litigation;

and (2) it bars all other claims relating to the same transaction against the same defendant

that could have been brought at that time." Northern Assur. Co., 201 F.3d at 87.

Plaintiff filed a Complaint in the Supreme Court of Onondaga County, New York on

March 8, 2018. See Exh. 1 to Declaration of Joshua Beardall ("Onondaga Complt."), dkt. #

10-4. The factual allegations in that Complaint are identical to the factual allegations in the

Complaint before this Court. Compare Complt. at ¶¶ 14-36 and Onondaga Complt. at ¶¶

8-30.[4] So are the parties, with the exception that Plaintiff named the City of Syracuse as a

party in State court. Compare Onondaga Complt. and Complt. Plaintiff filed an Amended

Complaint in the Onondaga County Court on March 13, 2018. See Exh. 2 to Declaration

of Joshua Beardall ("Onondaga Amended Complt."), dkt. # 10-4. The Amended Complaint

offered the same factual allegations as the original Complaint and sued the same parties.

See Id. at ¶¶ 8-30. The Amended Complaint raised nine causes of action. The first count

_____

[4]It appears to the Court that Plaintiff's counsel simply copied the factual allegations in the state-court Complaint into the Complaint filed in this Court. The Complaint filed in this Court contains many of the same typographical and grammatical errors as this earlier Complaint. For instance, the Onondaga County Complaint alleged that "Plaintiff told Bellamy that she was not going to his office and Bellamy grabbed by her are." Onondaga Complt. at ¶ 9. Presumably, Plaintiff meant to allege that "Bellamy grabbed her by her arm" and missed those errors while proofreading. The same errors occur in the Complaint filed in this Court. See Complt. at ¶ 15. Both Complaints also switch between narrative voice without explanation. In the Onondaga Complaint, Plaintiff alleged that "As we were walking passed [sic] students eating lunch, Bellamy grabbed Plaintiff's arm telling her you are going to my office." Onondaga Complt. at ¶ 10. The same line appears in the Complaint filed in this Court. Complt. at ¶ 16. This shift between narrative voices undermines the clarity of the Complaint and forces the Court to extrapolate to find meaning.

alleged that "[d]efendants, jointly and severally, negligently caused injuries, emotional distress [sic] and damaged the Plaintiff." Id. at ¶ 35. The second count alleged that Bellamy falsely imprisoned Plaintiff in his office on multiple occasions. Id. at ¶ 38. Count three alleged that the "Defendant Employer unlawfully and without cause discharged the Plaintiff as a direct result of Plaintiff's complaint of sexual harassment." Id. at ¶ 45. Count four alleged that Defendants violated Section 740 of the New York State labor law by firing her for reporting Defendant Bellamy's harassing conduct. Id. at ¶ 52. Count five appeared to allege intentional infliction of emotional distress. Id. at ¶ 56. Count six alleged that Plaintiff's firing for reporting Bellamy's conduct was a discriminatory practice that violated her rights under Section 296 of the New York Executive Law. Id. at ¶¶ 59-60. The seventh cause of action alleged that Defendants City of Syracuse, Syracuse City School District, and the Syracuse City School District Board of Education violated Executive Law Section 296 by "creating an intimidating, hostile and offensive work environment[.]" Id. at ¶ 67. An eighth cause of action alleged "negligent hiring, screening, retention, supervision and training of" Defendant Bellamy. Id. at ¶ 69. Count nine raised a litany of tort claims against the Defendants: "negligence, recklessness and carelessness; retaliation; hostile work environment; sexual harassment; . . . assault and battery; false imprisonment; wrongful termination and [intentional] inflict[ion] [of] emotional distress[.]" Id. at ¶ 71.

Defendants filed a motion to dismiss this Amended Complaint on April 13, 2018. See Exh. 3 to Beardsall Dec., dkt. # 10-4. Their brief argued that Plaintiff had failed to state any claim upon which relief could be granted. Brief in Support of Motion to Dismiss, included as part of Exh. 3 to Beardsall Dec., at 2. Defendants first argued that Plaintiff had failed to state a claim under Section 740 of the New York Labor Law. Id. at 3. Plaintiff had

been required under that statute to allege that she had been subject to retaliation for reporting a substantial danger to public health and safety.  Id.  Defendants argued that she had not stated such a claim.  Id.  Moreover, Defendants contended, by asserting a Section 740 claim, Plaintiff had waived all of her other claims arising from the same set of facts. Id. at 6.  Defendants also argued that Plaintiff's negligence claims asserting that Defendants caused her injury in the workplace were barred by New York's workers' compensation law.  Id. at 7-8.  To the extent that Plaintiff raised a claim for wrongful discharge, Defendants argued, she had failed to state a claim because no such claim exists in New York law.  Id. at 8-9.  Likewise, Defendants asserted, Plaintiff's intentional infliction of emotional distress claim should be dismissed because the conduct giving rise to the claim was the subject of the other tort claims in her Amended Complaint and because she failed to plead sufficient facts to state a claim anyway.  Id. at 9-10. Defendants further argued that the District and the Board could not be liable either for negligent hiring or training or in *respondeat superior*.  10-11.  In the end, the Defendants sought dismissal of the entire Complaint.  Id. at 12.

Deborah H. Karlunas, Justice of the Onondaga County Supreme Court, issued a decision granting Defendants' motion on November 26, 2018.  See exh. 4 to Beardsall Dec., dkt. # 10-4.  Judge Karlunas also denied Plaintiff's motion for leave to amend her complaint to include a cause of action pursuant to Civil Service Law § 75-b(2).  The decision notes that "[b]y stipulation . . . Plaintiff discontinued with prejudice her action against the City of Syracuse."  Id. at 2. Judge Karlunas first addressed Plaintiff's claim pursuant to New York Labor Law § 740.   She concluded that to state a claim for retaliation under that statute, a plaintiff needed to "'describe how the supposedly illegal activities in

question (which conduct must be contrary to law, rule or violation), imperil the health or safety of the public.'" Id. at 3 (quoting Connoly v. Harry MacKlowe Real Estate Co., 161 A.D.2d 520 (1st Dept. 1990)).  The judge found that Plaintiff had failed to state a claim because the activity she complained of involved a coworker and not the employer, and because she failed to plead any "facts even suggestive of a substantial and specific danger to the public health or safety." Id.  She granted the motion in this respect.  Judge Karlunas also examined the case law and concluded that Plaintiff's election of the remedy under Section 740 waived other remedies for the same conduct and found that the other causes of action should be dismissed.  Id. at 3-5.  While noting that other courts had come to a different conclusion, Judge Karlunas found that the language of the statute and "the facts alleged by the plaintiff in the instant proceeding, particularly the nature and alleged timing of plaintiff's complaint, make clear that her tort and employment practices claims are inextricably related to her retaliation claims."  Id. at 5.

Judge Karlunas further concluded that Plaintiff had failed to state a claim on any of her causes of action even without the Section 740 waiver.  Id. at 5-7.  Plaintiff's tort claims, she found, would be barred by the exclusive remedy contained in the Workers' Compensation Law.  Id. at 5.  Her intentional infliction of emotion distress claim would fail, the Judge found, for failing to allege any extreme and outrageous conduct.  Id. at 6. Claims against the School District and School Board would fail because such claims are barred by public policy.  Id.  Plaintiff's claims for unlawful employment practices, "*i.e.*, sexual harassment and wrongful discharge under New York Executive Law § 296 ("the Human Rights Law" or "HRL") and New York Constitution Art. 1, § 11, failed because Plaintiff had failed to file a notice of claim.  Id.  She also could not bring a claim against

12

Bellamy on these grounds because he was not her employer. Id. Moreover, the Judge concluded, Plaintiff had not alleged sufficient facts to bring a claim for sexual harassment against Bellamy; she had not alleged "'severe or pervasive'" conduct, but only "'isolated incidents.'" Id. (quoting Baliva v. State Farm Mut. Auto Ins. Co., 286 A.D.2d 953, 954 (4th Dept. 2001)). In denying Plaintiff's motion for leave to amend her complaint to add a claim under New York Civil Service Law § 75-b, the Judge found both that the law did not permit the Plaintiff to sue any of the Defendants and that she had waived that claim by filing her Section 740 claim. Plaintiff did not appeal this decision. She instead filed the instant action.

Here, the State-court case was decided on the merits and involved the same parties. The only question for the Court is whether the claims in this case which are raised pursuant to a different legal theory than those in the State case arise from the same transaction or occurrence as that in the State case. The Court decides that they do, and will grant the motion on *res judicata* grounds. Plaintiff imports the facts alleged in the Amended Complaint in State court wholesale, pleads many of the same causes of action, adds some federal claims, alters some legal theories, and asserts that she is not precluded from bringing this action by the earlier decision in New York. To reiterate, however, "[t]he doctrine of *res judicata*, or claim preclusion, prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits." L-TEC Elecs. Corp. v. Courgar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir. 1999). "Even claims based on different legal theories are barred provided they arise from the same transaction or occurrence." Id. at 88. The Court employs "three considerations" in deciding whether the claims arise from

the same transaction or occurrence: "'(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether treatment as a unit conforms to the parties expectations.'" Soules v .Connecticut, 882 F.3d 52, 55 (2d Cir. 2018) (quoting Channer v. Dept. of Homeland Sec., 527 F.3d 275, 280 (2d Cir. 2008)).  All of those considerations are met here; Plaintiff appears to have copied the facts alleged in her State-court Amended Complaint into this Complaint.  All of her causes of action arise from those facts. She cannot, therefore, avoid *res judicata* by shifting to a different set of legal theories based on the same set of facts. See, e.g., Berrios v. New York Hous. Auth., 564 F.3d 130, 135 (2d Cir. 2009) (for *res judicata*, "claims based on different legal theories are barred provided they arise form the same transaction or occurrence.").

Plaintiff argues that *res judicata* does not apply to this action because she could not have brought her claims in state court.  She points out that she received a right-to-sue letter from the Equal Employment Opportunity Commission in April 2019, which is precondition to bringing a discrimination claim in Federal court.  Plaintiff also contends that the New York State Human Rights Law bars a party who elects to pursue a remedy through the New York State Division of Human Rights from pursuing an action in court. Plaintiff apparently contends that the decision of the state court was improper because the state court did not have the authority to act on her claim: "[h]ow," she asks, "can the state order be the law of the case when it should not have been in the first place pursuant to Human Rights Law § 297(9) and Second Circuit case law[?]"  The state court, she claims, lacked "subject matter jurisdiction to hear and decide the case on its merits without the Plaintiff obtaining the right to sue notices from the EEOC which she did not receive" until

after the state court rendered a decision.  <u>See</u> <u>Woods v. Dunlop Tire</u>, 972 F.2d 36 (2d Cir. 1992).[5]

To the extent that Plaintiff's argument makes any sense,[6] it is unpersuasive.  First, if her complaint is that the State court's decision was wrong, or that she lacked standing to bring the claim in the first place, she could have appealed that error but did not.  New York courts long ago held that "'[t]he effect of the judgment is not at all dependent upon the correctness of the verdict or finding upon which it was rendered.' . . Error, if there was any, must be corrected by direct review."  <u>Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.</u>, 250 N.Y. 304, 306 (N.Y. 1929) (quoting <u>Wilson' Executor v. Deen</u>, 121 U.S. 525 (1887); <u>American Express Co. v. Mullins</u>, 212 U.S. 311 (1909)).  This Court does not serve as an alternate venue for appealing unfavorable state-court decisions, and *res judicata* serves to preclude re-litigation of a matter that could have been raised in the earlier proceeding.  <u>See</u> <u>Irish Lesbian & Gay Org. v. Giuliani</u>, 143 F.3d 638, 644 (2d Cir. 1998) ("Res judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated.").

If Plaintiff's argument is that her claims are not barred by *res judicata* because she

_____

[5]As Defendants point out, Plaintiff's argument here is unsupported by the facts.  Plaintiff did not file a claim with the Division of Human Rights and her claims in the State court were not subject to the statute.  Nothing indicates the State court considered whether the claim was barred by any such filing, and the issue, if applicable, clearly could have been raised.

[6]The Court has quoted or paraphrased nearly the sum of Plaintiff's argument in her brief.  She discusses none of the elements of *res judicata*, does not address the distinction between that doctrine and the doctrine of collateral estoppel, and fails to address in substance any of Defendant's arguments.  The Court, in an effort to treat Plaintiff fairly, is left to attempt to decipher a cogent argument for her position from what her brief presents.

15

could not have raised her Title VII claims in State court until she received the right-to-sue letter from the EEOC, she is also mistaken.  First, that would not excuse most of her claims from the doctrine, since she did litigate identical tort and state-law claims in State court.  Second, as Defendants point out, the Supreme Court has concluded that the exhaustion requirement in Title VII claims is not jurisdictional.  See Fort Bend City v. Davis, 139 S.Ct. 1843, 1846 (June 3, 2019) ("Title VII's charge-filing instruction is not jurisdictional" but is more "properly ranked among the array of claim-processing rules that must be timely raised to come into play.").  As such, any claim that *res judicata* does not apply to Plaintiff's federal anti-discrimination claims because the State Court lacked jurisdiction over them must fail.  See Kissell v. Pa. Dept. of Corr., No. 18-cv1409, 2019 U.S. Dist. LEXIS 145242 at *10 (W.D.Pa. Aug. 27, 2019) (granting motion to dismiss on *res judicata* grounds because exhaustion under Title VII is not jurisdictional).  Third, courts in this Circuit have held that *res judicata* applies to Title VII claims where the Plaintiff had not exhausted her administrative remedies when the court made the decision establishing *res judicata*.  Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot, 882 F.3d 52, 57 (2d Cir. 2018) ("*Res judicata* applies to claims pending review in administrative proceedings."); Wynn v. Union Local 237, I.B.T., No. 19-962 2019 U.S. App. LEXIS 36848 (2d Cir. Dec. 13, 2019); Woods, 972 F.2d at 41).

As such, the doctrine of *res judicata* bars Plaintiff's claims, and the Court will grant the motion in this respect.

### B.    Collateral Estoppel

Defendant next argues that collateral estoppel also bars Plaintiff's claims and

requires dismissal.

"A federal court must apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues currently before the court[.]" Lafleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002).  In New York, "collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'"  Id. (quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); see also, Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003) ("Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action.")).   Collateral estoppel applies in New York when "'the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999)).  "[T]he issue that was raised previously must be 'decisive of the present action.'" Id. (quoting Schwartz v. Public Adm'r of Bronx, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)).  In New York, "collateral estoppel is a flexible doctrine and whether to apply it in a particular case depends on 'general notions of fairness involving an inquiry into the realities of the litigation.'" In re Hyman, 502 F.3d 61, 65-66 (2d Cir. 2007) (quoting Jeffreys v. Griffin, 1 N.Y.3d 34, 39, 801 N.E.2d 404, 769 N.Y.S.2d 184 (2003)).

Defendants argue that the state-court decision resolved a number of issues, which

Plaintiff may not relitigate in this action.  First, the Defendants contend that the State court ruled that all of Plaintiff's claims were "inextricably related to her retaliation claims," and that Plaintiff had waived those claims by asserting a claim pursuant to Section 740. Plaintiff raises claims based on those same facts here, and is barred by collateral estoppel. Second, the State court also found that Plaintiff's tort claims were barred by state workers' compensation law and dismissed all such claims.  Plaintiff, Defendant claims, cannot relitigate those tort claims in this Court.  Third, the State court also concluded that Plaintiff could not bring claims for sexual harassment or retaliation on various grounds.  First, Plaintiff had failed to file a notice of claim, as required by the New York Human Rights Law.  She also could not sue Bellamy, since he was not an employer.  Finally, the Court found that Plaintiff had failed to allege harassment that was severe and pervasive enough to state a claim.  Finally, the State court found that Plaintiff could not bring a Section 740 claim because she failed to allege a substantial and specific danger to public health and safety.

Plaintiff's response to Defendants' collateral estoppel argument is again difficult to make sense of.  She does not attempt to explain the doctrine, and makes no effort to address exactly why she believes collateral estoppel does not apply to this case.  She appears to argue that she should be permitted to bring a common-law "whistleblower" claim because she did not raise such a claim in a prior proceeding but she did file complaints with the EEOC and the New York State Division of Human Rights.  Plaintiff also attempts to address the issue of whether filing a Section 740 claim waived her right to

bring the instant claims.[7]

The Court finds that collateral estoppel bars all of Plaintiff's claims. As explained above, the state-court decision resolved all questions in the Defendant's favor. The issues addressed in Plaintiff's state-court action were the same issues she attempts to raise here, and those issues have already been resolved. The state court concluded that she had failed to raise a claim upon which relief could be granted based on the facts alleged in the state-court Amended Complaint, the same facts alleged here. The state court found that Plaintiff's tort claims were barred by the workers' compensation law, and that she could not bring any sexual harassment or retaliation claims based on the facts alleged. Those issues are the same issues that arise here. Allowing Plaintiff to file a complaint in this court based on those same facts would force the Court to rule on issues already decided and would undermine the finality of the previous decision. As such, the Court will find that collateral estoppel applies as well, grant the motion in this respect, and dismiss all of Plaintiff's claims, with prejudice.

---

[7]The grammar, syntax, and style of Plaintiff's brief in the section that addresses Section 740 is much better than the rest of the brief. See Plaintiff's Brief in Opposition, dkt. # 20-14, at 11-13. An on-line search by the Court quickly revealed the reason why counsel's writing improved so dramatically: he plagiarized a large portion of Judge Wexler's decision in Barker v. Peconic Landing at Southhold, Inc., 885 F.Supp.2d 564 (E.D.N.Y. 2012) (compare Plaintiff's Brief at 11-13 with Barker, 885 F.Supp.2d at 568-69). Passing off another's ideas as one's own is unacceptable in a first-year college class, and can lead to failing grade or even expulsion. Doing so while engaged in the professional practice of law is worse, and is both feckless and embarrassing. Such conduct demonstrates a lack of respect for the Court, for the other side in the dispute, and for the sort of diligent effort at research and writing that protects the interests of a lawyer's clients. That conduct may also be a violation of the American Bar Association's Model Rules of Professional Conduct. See ABA Model Rule of Professional Conduct 8.4 (establishing that "It is professional misconduct for a lawyer to: . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."). Plaintiff's counsel should do his own work from now on.

19

### D.    Failure to State a Claim

Defendants also argue that, if Plaintiff's claims were not barred by the previous state-court decision, the Court would be compelled to grant their motion to dismiss for failure to state a claim.  The Court has found that Plaintiff's claims are barred by collateral estoppel and *res judicata*.  The Court will therefore decline to address the remainder of Defendants' motion.

### E.    Leave to Amend

Plaintiff argues that, should the Court find that she has failed to state a claim upon which relief can be granted, she should be permitted to file an Amended Complaint.  She moves for permission to do so.  <u>See</u> dkt. # 20.  Plaintiff does not provide any proposed Amended Complaint, as required by Local Rule 7.1(4), nor does she inform the Court about what she might allege in her proposed amended pleading.  <u>See</u> L.R. 7.1(4) ("A party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers.").[8]

The Plaintiff's failure to follow the formal procedures dictated by the Local Rules is not in itself a reason to deny the motion to amend.  <u>See</u> <u>F5 Cpital v. Pappas</u>, 856 F.3d 61, 89 (2d Cir. 2017) ("the informality of the request" to amend "is not ordinarily a basis to

---

[8]Plaintiff could, of course, have filed an amended complaint within twenty-one days of the date Defendants served her with their motion to dismiss.  <u>See</u> FED. R. CIV. P. 15(a)(1)(B)(a party may file an amended pleading within 21 days after service of a motion under Rule 12(b)).  She did not do so.  She received three extensions of time to respond to the motion to dismiss, but never took an opportunity to exercise her right to file an amended complaint.  <u>See</u> dkt. #s 14, 16, 18.  The Court of course has the discretion to dismiss a claim with or without prejudice to repleading, and will generally allow repleading if Plaintiff could plead any facts which would permit her to state a claim upon which relief could be granted.

deny leave to amend"). The federal rules provide that "leave to amend the pleadings should be freely give[n] . . . when justice so requires." <u>AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.</u>, 626 F.3d 699, 725 (2d Cir. 2010) (internal citations omitted). Generally, courts in this Circuit have permitted "'a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" <u>Id.</u> (quoting <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d. Cir. 1993)). Still, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (quoting <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Here, the Court will deny Plaintiff's motion for leave to file an amended complaint because amendment would be futile. As explained above, any claims arising out of the events here in question have already been adjudicated and Plaintiff cannot use this Court as a substitute for the appeal she never took in the proceedings in state court. Allowing Plaintiff to file another complaint based on this same set of facts would only lead to the same outcome: dismissal. Moreover, Plaintiff does not even offer a description of how she intends to amend her Complaint to overcome the failings that Defendants have identified. A party's failure to explain how re-pleading would cure defects can be grounds for denying a motion to amend. <u>F5 Capital</u>, 856 F.3d at 89 (no abuse of discretion in finding of futility when plaintiff did not bother, even on appeal, to explain how the complaint would be amended).

F.      **Sanctions**

Defendants argue that the Court should sanction the Plaintiff for filing the Complaint

in the first place.  They have filed a motion for such sanctions.  <u>See</u> dkt. # 28.  Defendants

contend that Plaintiff knew that the matter was barred by preclusion doctrines and still filed

the action.  Doing so amounts to abuse of process and should result in the Court imposing

sanctions.  Defendants contend that they have expended over $13,000 in fees and costs in

defending the instant claim.  They seek to recover those fees and costs, as well as other

sanctions.  They argue that they should obtain sanctions against Plaintiff's counsel for

making a frivolous argument about preclusion that any lawyer of common sense would

know would fail.  They also contend that Plaintiff herself should face sanctions for

engaging in harassing and needless litigation.

Federal Rule of Civil Procedure 11(b) provides that "an attorney or unrepresented

party" who "present[s] to the court a pleading, written motion, or other paper" has

"certifie[d]" that:

> (1) it is not being presented for an improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing existing law or
> for establishing new law:
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically
> so identified, are reasonably based on a lack of information.

FED. R. CIV. P. 11(b).  The Court may impose "an appropriate sanction on any attorney,

law firm, or party that violated [this] rule or is responsible for the violation."  FED. R. CIV. P.

11(c)(1).

Under this rule, "sanctions shall be imposed against an attorney and/or his client

when it appears that a pleading has been interposed for an improper purpose, *or where*,

after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Eastway Constr. Corp. v. New York, 762 F.3d 243, 254 (2d Cir. 1985) (emphasis in original). Courts do not use this rule to stifle good-faith efforts to advance the law, "[b]ut where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands, Rule 11 has been violated." Id. Courts may impose sanctions when a party violates Rule 11, but are not required to do so. Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 (2d Cir. 2012). "'When divining the point at which an argument turns from merely losing to losing *and* sanctionable . . . we have instructed district courts to resolve all doubts in favor of the signer.'" Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993) (quoting Associated Indem. Corp. v. Fairchild Indus., 961 F.2d 32, 34 (2d Cir. 1992)).

Defendants' papers make clear that they seek sanctions both against the Plaintiff and against her attorney. They argue that Plaintiff filed her lawsuit in this Court after failing to obtain the results she sought in state court out of a desire to harass and punish the Defendants. Though the Court recognizes that Plaintiff has continued to seek relief from the courts long after she should have recognized that such relief was unavailable, and that such persistence caused Defendants to expend funds on defense they would not otherwise have been required to expend, the Court will decline to impose sanctions on the Plaintiff herself. The Court has discretion in this respect, and the Court recognizes that this is a case where the Plaintiff alleges that she has been genuinely harmed and misused

23

by a former supervisor and a former employer.  Defendants dispute those facts, but Plaintiff insists her version of events is true and, like many plaintiffs, has continued to seek out a forum in which to air her grievances and have their alleged source punished.  Such conduct is a human response to the pain of losing a job.  The Court also notes that dismissal of Plaintiff's Complaint in this court came as a result of the application of legal doctrines that not all lawyers understand fully or correctly, and not because of any finding that Plaintiff engaged in any deception.  Under those circumstances, the Court finds that *Plaintiff* did not institute this litigation in an attempt to harass the Defendants or force them to expend unnecessary sums, and will not impose any sanctions on her.

The Court finds, however, that Plaintiff's counsel violated Federal Rule of Civil Procedure 11(b)(2) in filing this action and continuing to argue against the application of *res judicata* and collateral estoppel to this case.  Rule 11(b)(2) requires an attorney to certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" when filing papers before a court.  FED. R. CIV. P. 11(b)(2).  Plaintiff's counsel filed complaints in state court.  The state-court judge issued a thorough decision dismissing the Amended Complaint on the merits after extensive briefing.  Plaintiff did not appeal, but instead filed a nearly identical action in this Court, relying on the same facts and making most of the same claims.  Even a basic understanding of *res judicata* and collateral estoppel would have led counsel to conclude that the action filed in this Court could not succeed.[9]  Counsel's arguments in opposing Defendants' motion were

---

[9]The parties argue about whether the Plaintiff's counsel should also have known that her claims were barred by the statute of limitations.  The Court has not addressed this

24

unpersuasive, and did not represent any reasonable attempt to extend or modify the law of such doctrines. Instead, counsel's briefing was often incoherent, poorly edited, and sloppy. Only one portion of the briefing was well-drafted, and that portion was plagiarized from a state-court opinion. The Court must therefore conclude that counsel's conduct in filing this action and briefing the Defendants' motion to dismiss/for summary judgment exposes him to sanctions.

The Court notes that employment discrimination cases are often emotional matters. Clients in such cases have often endured humiliating experiences, losing jobs they felt they did well, and for reasons that such plaintiffs consider unjust and unfair. They want a court to acknowledge that they have been wronged, and they want their former employers to admit that too. The law of employment discrimination, however, does not expose employers to liability for every bad or unfair decision. The law of employment discrimination is aimed at particular types of misconduct, and often fails to provide relief to employees who are convinced that they were the victims of bad decisions. The state court concluded that Plaintiff was one of those people.

A lawyer's job under those circumstances is often difficult, particularly when the lawyer finds no valid grounds for appeal. The lawyer must find a way to tell his client, firmly but gently, that the case has ended. The lawyer must explain to his client that the law does not offer the client a chance for recovery. Continuing to spend time and money in pursuing the matter will not change the situation, and the best solution for the client is to accept defeat and move on.

───────────────────

issue because res judicata and collateral estoppel preclude any claims in any case.

Plaintiff's counsel had an opportunity to have that conversation with his client. He did not do so. Instead, he filed almost the same complaint in a different court. He achieved the same result. A basic knowledge of the law should have told him that the Court would reach the conclusion it has. Filing a complaint in this Court wasted both judicial resources and the resources of the Defendants. The Court finds that a sanction of $5,000, to be paid by Plaintiff's counsel as a portion of the attorneys fees expended by Defendants, is necessary to address this conduct and recompense Defendants. While the amount is less than the Defendants seek, the Court finds that this amount is sufficient to address the misconduct of Plaintiff's counsel, deter such future misconduct, reimburse Defendants, and protect the integrity of future Court proceedings.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss and for summary judgment, dkt. # 10, is hereby GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Plaintiff's motion for leave to file an amended complaint, dkt. # 20, is hereby DENIED. Defendants' motion for sanctions, dkt. # 28, is hereby GRANTED in part and DENIED in part. The Court will GRANT the motion for sanctions, but not in the full amount Defendants request. Plaintiff's **counsel** is hereby ORDERED to remit to Defendants $5,000 as partial recompense for attorneys fees expended as a sanction for violation of Federal Rule of Civil Procedure 11(b)(2) within forty-five days of the date of this order.

**IT IS SO ORDERED.**

**DATED:** April 7, 2020

Thomas J. McAvoy
Senior, U.S. District Judge

26